PEOPLE v BLUE

Docket Nos. 77-5011, 78-278. Submitted December 29, 1981, at Lansing.—Decided January 21, 1982.

Defendant, Marvin Blue, was tried in two separate bench trials in Recorder's Court of Detroit and found guilty of two counts of first-degree criminal sexual conduct and one count of armed robbery in the first trial and guilty but mentally ill of one count of first-degree criminal sexual conduct and one count of armed robbery in the other, George T. Ryan, J. Defendant appealed, alleging ineffective assistance of counsel because of counsel's failure to present an insanity defense. In an unpublished per curiam opinion released October 3, 1979, the case was remanded to the lower court to determine whether the defendant was denied the effective assistance of counsel and for the judge to explain the differing verdicts of guilty in one case and guilty but mentally ill in the other. The Court of Appeals retained jurisdiction unless defendant moved for a new trial and his motion was granted. At the hearing on remand, Judge Ryan testified that he intended to find defendant guilty on all charges but, in order to benefit defendant and to allow him to receive psychiatric treatment while incarcerated, he found defendant guilty but mentally ill on the charges in one trial based upon a psychiatrist's testimony. However, the psychiatrist's testimony was offered at that trial only and Judge Ryan indicated that he therefore restricted its use to that trial. The record indicated that trial counsel caused defendant's mental status to be investigated. Defendant had been under supervision for approximately six months prior to trial, and there were five reports from the various experts in the record. From the standpoint of trial tactics, trial counsel was faced with a situation where only a psychologist who had examined defendant only once concluded that defendant was incompetent, while three psychiatrists and a psychologist concluded that defendant

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21A Am Jur 2d, Criminal Law §§ 752, 984-987.

Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.

was malingering, faking mental illness, and had no substantial mental deficiency. Defendant's motion for a new trial was denied, Justin C. Ravitz, J. *Held:*

1. The practical effect of Judge Ryan's verdicts was the same as though defendant had been found guilty but mentally ill on all charges in view of the concurrent sentences. The fact that the verdicts were not totally consistent is of no significance, especially in view of the separate trials.

2. The standard for determining whether a defendant had effective assistance of counsel in a criminal trial is that defense counsel must have performed at least as well as a lawyer with ordinary training and skills in the criminal law, must have conscientiously protected his client's interests, undeflected by conflicting considerations, must have investigated all apparently substantial defenses available to the defendant and must have asserted them in a proper and timely manner. Defense counsel's decision not to assert an insanity defense was reasonable in view of the psychiatric testimony available to the prosecution. Defendant was not denied effective assistance of counsel.

Affirmed.

1. CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL.

The standard to determine whether a defendant had effective assistance of counsel in a criminal trial is that defense counsel must have performed at least as well as a lawyer with ordinary training and skill in the criminal law, must have conscientiously protected his client's interests, undeflected by conflicting considerations, must have investigated all apparently substantial defenses available to the defendant and must have asserted them in a proper and timely manner.

2. CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL.

The assistance of counsel in a criminal trial has not been constitutionally defective if action of counsel that appears erroneous from hindsight was taken for reasons that would appear sound to a competent criminal attorney.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Bernstein & Rabinovitz, P.C.,* for defendant on appeal.

Before: N. J. KAUFMAN, P.J., and D. C. RILEY and J. X. THEILER, * JJ.

PER CURIAM. On October 3, 1979, this Court remanded these two cases to the trial court for a hearing on defendant's ineffective assistance of counsel claim, with leave to defendant to move for a new trial. The trial court was ordered to determine why defense counsel did not assert an insanity defense, what evidence was available to support that defense, and why defense counsel did not take advantage of the available evidence concerning defendant's mental condition. The trial court was also ordered to explain why it rendered the differing verdicts of guilty and guilty but mentally ill. We retained jurisdiction in the event that defendant's motion for new trial was denied.

The record shows that on October 29, 1976, the trial court ordered defendant to undergo a forensic examination at the Certified Forensic Facility of the Psychiatric Clinic of Recorder's Court to determine his competency to stand trial. In a report dated November 3, 1976, Dr. Albert J. Wallaert, Chief Psychiatrist of the facility, and James D. Little, Clinical Social Worker, opined that defendant was incompetent to stand trial due to hallucinations and memory loss but that there was a substantial chance that defendant would attain competence through treatment. On November 17, 1976, defendant was committed to the Department of Mental Health for treatment. In a report by Robert S. McGowan at the Center for Forensic Psychiatry, dated December 16, 1976, it was found by the examiner, in essence, that defendant was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

faking his hallucinations and other symptoms, that defendant was a very angry, demanding, and manipulative young man, and that defendant was not intellectually deficient in any way.

Defendant was found competent on January 17, 1977, and on that date, the trial court entered an order appointing psychologist Dr. Jean Braun to examine defendant for a determination as to his recollection of the crimes alleged. Dr. Braun examined defendant on February 17, 1977, and her report states that defendant was retarded, possibly brain-damaged, and would be unable to cooperate with his attorney at trial.

On March 11, 1977, the trial court ordered defendant to undergo a second forensic examination at the Recorder's Court facility. The report of Dr. Wallaert and Mr. Little, dated March 14, 1977, indicated that defendant was disoriented and bizarre, was responding to auditory hallucinations, and was incompetent to stand trial. Defendant was committed to the Department of Mental Health for treatment.

In a report dated May 31, 1977, forensic psychiatrist Dr. Leon J. Quinn indicated that, contrary to his behavior in the past, defendant was able to give a complete and coherent past history, including the charges pending against him, was attempting to "sabotage" the psychological testing, and was neither mentally ill nor mentally retarded.

On June 17th, defendant's trial counsel filed a "Motion for Physical Examination" in order to determine whether there was a physical cause for defendant's apparent loss of memory. On the first day of trial, this motion was taken under advisement but was not pursued thereafter. On October 4, 1977, ten days before commencement of trial, defendant's trial counsel filed a "Notice of Defense of Mental Illness".

At trial, Dr. Wallaert of the Recorder's Court Facility testified concerning defendant's mental illness. Dr. Wallaert stated that, because of defendant's bizarre behavior, he gave defendant the benefit of the doubt and stated that defendant was incompetent in order that defendant would be available for observation and treatment at the Forensic Center. He further testified that defendant's behavior was consistent with psychosis and with malingering but that defendant was not psychotic or schizophrenic. Dr. Wallaert stated that, although defendant's symptoms were not indicative of true mental illness, further observation was warranted. Still, he believed that defendant's symptoms were voluntary and that defendant was not really incompetent but, at most, was suffering from a character disorder, *i.e.,* impulse-ridden behavior, and was unable to learn from past experiences.

Defendant was tried in two separate bench trials before visiting Recorder's Court Judge George T. Ryan. Defendant was found guilty of two counts of criminal sexual conduct in the first degree, MCL 750.520b; MSA 28.788(2), and one count of armed robbery, MCL 750.529; MSA 28.797, in lower court file No. 76-08349. Defendant was found guilty but mentally ill[1] of one count each of criminal sexual conduct in the fist degree and armed robbery in lower court file No. 76-08348. Defendant was sentenced to three concurrent terms of 25 to 50 years imprisonment for each count in file No. 76-08349, and to life imprisonment on both counts in file No. 76-08348.

The issue before the trial court on remand, which is before us now, is whether the failure of defendant's appointed trial counsel to assert the

---

[1] MCL 768.36; MSA 28.1059.

defense of insanity constituted ineffective assistance of counsel thereby entitling defendant to a new trial.

At the hearing on remand before Recorder's Court Judge Justin C. Ravitz, Judge Ryan testified that he intended to find defendant guilty on all charges but, in order to benefit defendant and to allow him to receive psychiatric treatment while incarcerated, he found defendant guilty but mentally ill on the charges in lower court file No. 76-08348, based upon Dr. Wallaert's testimony. However, the doctor's testimony was offered on those charges only and Judge Ryan indicated that he therefore restricted its use to those charges. The practical effect of Judge Ryan's verdicts is the same as though defendant had been found guilty but mentally ill on all charges in view of the concurrent sentences. The fact that the verdicts were not totally consistent is of no significance, especially in view of the separate trials.

Defendant's trial attorney testified that, after the report indicating that defendant was malingering and could remember the facts of the case but refused to relate them was received, defendant was examined by pshchologist Dr. Jean Braun to determine whether he was faking his symptoms. Counsel further stated that, although he initially considered asserting an insanity defense, he ultimately believed that the defense did not exist, based upon the reports from the Center for Forensic Psychiatry, the changed opinion of Mr. Little, and his own observations. Further, counsel indicated that Dr. Quinn's report that defendant was faking and that defendant was neither mentally ill nor mentally retarded convinced him not to file an insanity defense. Trial counsel also noted that defendant acted calmly and could answer ques-

tions when he was in jail but that, when defendant was in court, he would rock back and forth, making sounds. He stated that he did not call Mr. Little because Mr. Little indicated that he would testify that defendant was malingering. Further, he stated that defendant refused to discuss the case, claiming he didn't know or remember, and that he confronted defendant numerous times stating that defendant would be convicted if he only stated that he didn't know or remember the crimes alleged.

Judge Ravitz denied defendant's motion for new trial, stating that trial counsel had a basis for concluding that defendant was faking mental illness and that he should not pursue an insanity defense.

In *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), the Supreme Court adopted the doctrine established in *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974), concerning effective assistance of counsel which held that:

"Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting consideration. * * * Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner. * * *

"It is a denial of right to the effective assistance of counsel for an attorney to advise his client erroneously on a clear point of law if this advice leads to the deprivation of the client's right to a fair trial. * * * Defense strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent deny a criminal defendant the effective assistance of counsel, if some other action would have better protected a defendant and was reasonably foreseeable as such before trial. * * * If, however, action

that appears erroneous from hindisght was taken for reasons that would appear sound to a competent criminal attorney, the assistance of counsel has not been constitutionally defective. * * *"

Clearly, trial counsel caused defendant's mental status to be investigated. Indeed, defendant was under supervision for approximately six months prior to trial, and there are five reports from the various experts in the record. From the standpoint of trial tactics trial counsel was faced with a situation where only Dr. Braun, a psychologist who examined defendant only once, concluded that defendant was incompetent, while three psychiatrists and a psychologist concluded that defendant was malingering, faking mental illness, and had no substantial mental deficiency.

While appellate counsel asserts that trial counsel was subject to conflicting considerations, these are not set forth. Contrary to appellate counsel's claim, trial counsel's belief that defendant was malingering is not "clearly erroneous". Indeed, such belief was reasonable and supported by evidence in the record.

Based upon the entire record, defendant has failed to establish that he has been denied effective assistance of counsel. Trial counsel's decision not to assert an insanity defense was reasonable in view of the psychiatric testimony available to the prosecution. While it is true that defendant had no defense to the charges pending against him, the defendant himself was the author of his own problems, because of his refusal to discuss these cases with trial counsel. Defendant's motion for new trial was properly denied.

Affirmed.